## In re VOORHIS et al.

### In re WELLER.

(District Court, S. D. New York. March 2, 1923.)

1. **United States ☞14—Court cannot supervise subpœna issued to perpetuate testimony for House of Representatives in election contest.**

   Under Rev. St. tit. 2, c. 8 (Comp. St. §§ 161–187), enacted in aid of the power of the House of Representatives conferred by Const. art. 1, § 5, to judge of the election of its members, and which prescribes how evidence may be perpetuated for use in contested elections, the prerogative of the House is strictly judicial and a subpœna issued in accordance with the provisions of that chapter is not subject to the control or supervision of the District Court, and cannot be quashed by the court, unless under some statute giving the court such authority.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**2. United States ⊂⊃14—Authority to enforce penalty for disobedience to subpœna in election contest does not authorize supervision thereof by court.**

Rev. St. § 116 (Comp. St. § 173), creating a penalty and a crime for disobedience to a subpœna issued for the perpetuation of testimony to be used in an election contest before the House of Representatives, and giving the District Court cognizance over such penalty and crime, does not give the court jurisdiction to supervise the use of the subpœna, nor to quash it when not authorized, nor would a grant of authority to the court to punish disobedience to the subpœna as contempt necessarily give it authority to supervise or quash.

**3. United States ⊂⊃14—Court cannot determine whether state board of elections must obey subpœna in House election contest.**

Where a subpœna had been issued by a notary public under Rev. St. § 123 (Comp. St. § 180), to a city board of elections to produce for examination all the ballots voted at the election for member of Congress which had been contested, and obedience to such subpœna would have violated the state statute regulating production of the ballots, the District Court is without jurisdiction to determine whether the subpœna or the state statute must prevail, but that question must be determined by the election board at their peril.

Separate rules nisi on behalf of John R. Voorhis and others and of R. H. Weller to vacate a subpœna issued by a notary public in aid of proceedings to contest an election for member of Congress. Rules discharged.

These are two rules nisi to vacate a subpœna issued by a notary public under section 123 of the Revised Statutes, supported by original petitions. At the general election on November 7, 1922, Royal H. Weller was returned by the proper authorities as member of Congress from the Twenty-First congressional district of the state of New York. His nearest opponent was Martin H. Ansorge. Weller's plurality was between 300 and 400 votes out of a total of 70,000, and within the time prescribed Ansorge filed a notice of contest under Revised Statutes, § 105 (Comp. St. § 161), to which Weller answered, under section 106 (Comp. St. § 162). Thereupon Ansorge applied to a notary public, an employee in his own office, for the issuance of a subpœna duces tecum against the board of elections of New York City to produce for examination all the ballots voted at the election, assuming that under section 123 (Comp. St. § 180) the notary public could issue a subpœna duces tecum, just as under section 110 (Comp. St. § 167) he may issue a subpœna ad testificandum. The notary issued such a subpœna, which was served on the board.

Weller's rule was upon the theory that the notice was inadequate, under previous rulings of the House in such cases, and that the court might examine its sufficiency and quash the subpœna on that account. The rule of the board of elections depended upon the fact that under the state statutes they were required to keep the ballots "inviolate" for six months after the election, and that the subpœna, therefore, required them to do that which the state law forbade.

George P. Nicholson, of New York City, for Voorhis and others.

George W. Olvany and Edgar T. Brackett, both of New York City, for Weller.

Siegel & Corn, of New York City, for Ansorge.

LEARNED HAND, District Judge (after stating the facts as above). [1] Chapter 8 of title 2 of the Revised Statutes is in aid of the power of the House of Representatives conferred by section 5 of article 1 of the Constitution. It prescribes how evidence may be perpetuated for use in contested elections. The prerogative of the House

⊂⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

is strictly judicial, and descends from the English Parliament as High Court. Perhaps without act of Congress the House has no power to perpetuate testimony at all, just as the District Court, unless similarly authorized, would have no such power. It makes no difference; at least, the writ does not issue out of this court. It is not necessary even to say that it issued out of the House as a court; it is enough if it be the mere creation of the statute. To be within the compass of this court's powers it must be its order. Merely as a subpœna, eo nomine, the House has more control over it than any other court. Unless under some statute, the District Court has nothing to do with its use or the consequences of disobedience.

[2] Section 116 (Comp. St. § 173) creates a penalty and a crime for disobedience, cognizance over which is given to the District Court. There is no question of the validity of this provision, but how can it be argued that any wider jurisdiction was conferred? The section precludes the supposition that this court was given any power to punish for contempt. Indeed, had that power been added, it would have been anomalous at best, perhaps of doubtful validity, for contempt is a sanction inherent in courts only to protect their own orders. Nor, indeed, would it necessarily follow, as was assumed at the bar, even if this court might punish disobedience to the subpœna as a contempt, that it could supervise its use or quash it when not authorized.

Again, the House is the exclusive judge of the "elections, returns and qualifications of its own members." Assuming that the ancillary power to perpetuate testimony must have the sanction of Congress, clearly it is the House alone which must on the contest, as a court, determine whether the procedure so created has been regularly followed. Consider the effect of a contrary notion. I am invited here to declare that the notice given under section 105 is insufficient. This is the only reason urged by the petitioner for quashing the subpœna. But that question is justiciable by the House, and by the House alone. Suppose I were to take sides with the petitioner, and my decision were affirmed by the Circuit Court of Appeals, or perhaps by the Supreme Court on certiorari? Is the House to yield to that decision? Clearly not; the Constitution has put that matter exclusively in its own hands. Suppose that it reaches another conclusion. Though the contestant have followed the established procedure, as determined by the House having plenary jurisdiction, it must lose the benefit of the evidence which would otherwise be forthcoming. There is no more propriety in that than in taking jurisdiction over a commission de bene esse out of an independent court.

It may be true that in debt for the penalty, or on indictment, this court might have to inquire as to those very matters. If so, the conflict would be unavoidable; but there is at least this difference. The court would not in that case actively interfere in the proceedings of the House itself. While its decision might not accord with that of the House upon the same issues, the only result would be not to enforce the statutory penalties. And if the House have power to enforce the subpœna by contempt, that sanction would remain.

[3] The position of the board of elections may prove embarrassing,

assuming it has no choice but to disregard one law or the other. Yet it is clear either the state or the United States must prevail. Without undertaking to express any opinion on that question, it is enough that I cannot determine it merely because it would relieve the board. No one suggests that they need surrender the ballots; section 123 is clearly to the contrary. As to the exhibition of them for a recount, they must unhappily determine that question at their peril. Fortunately, the practical dangers appear rather formal than real. No one can seriously suppose that an honest decision of the board will subject them to severe results.

It may be that chapter 8 of title 2 is too scanty to create a sufficient procedure. With that I have nothing to do; Congress has thought it enough, and it must suffice. But, whatever its adequacy or inadequacy, it can scarcely be charged against it that it failed to provide for quashing the subpœna because of any such reasons as are here suggested. The contestant's notice may be the equivalent of a pleading, as was suggested at the bar; but, if so, the validity of the subpœna would not depend, under ordinary analogies, upon its sufficiency. At most, no more can be at stake than the cost in which the inquiry may involve the member now returned. The risk that this will not be made good to him must, as things stand, be accepted as a hazard he accepts in maintaining his office.

Rules discharged.